UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GARLAND WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-00746 (PLF) and |
| | ) | Civ. No. 07-00837 (PLF) |
| BUREAU OF PRISONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants the Bureau of Prisons, the Director of the Bureau of Prisons (sued only in his official capacity), Harrell Watts (Administrator of National Inmate Appeals, who is being sued both in his official and individual capacities), and Jenny Jones (a case manager at plaintiffs prison, who is being sued in both her official and individual capacities) move to dismiss these cases under Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b) (5), and (b) (6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. As grounds for this motion, defendants assert that there are no genuine issues of material fact in dispute and that they are entitled to judgment as a matter of law. A memorandum of points and authorities, a statement of genuine issues of material fact not in dispute, and a proposed order granting the relief sought are attached hereto.

Plaintiff should take notice that any factual assertions contained in the attachments in support of defendants' motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the defendant's attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal
knowledge, shall set forth such facts as would be admissible in

evidence, and shall show affirmatively that the affiant is competent
to testify to the matters stated therein.  Sworn or certified copies of
all papers or parts thereof referred to in an affidavit shall be
attached thereto or served therewith.  The court may permit
affidavits to be supplemented or opposed by depositions, answers
to interrogatories, or further affidavits.  When a motion for
summary judgment is made and supported as provided in this rule,
an adverse party may not rest upon the mere allegations or denials
of the adverse party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial.  If the
adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
            /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARLAND WALTON,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )    Civ. No. 07-00746 (PLF) and
                                         )    Civ. No. 07-00837 (PLF)
BUREAU OF PRISONS, et al.,               )
                                         )
                    Defendants.          )

DEFENDANTS' STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendants respectfully submit, in accordance with LCvR 56.1, the following statement

of material facts as to which there is no genuine issue to be tried:

1.  Harrell Watts is BOP's National Inmate Appeals Administrator.  See second exhibit to

each of the complaints (the decision by Mr. Watts affirming the decision by the warden at

plaintiff's prison, a decision that denied plaintiff's administrative remedy appeal seeking reversal

of the decision denying him assignment to a half-way house for the last six months of his prison

sentence).

2.  BOP's administrative remedy process is set forth at 28 C.F.R. Part 542 (Admin-

istrative Remedy).

3.  The "purpose of the Administrative Remedy Program is to allow an inmate to seek

formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R. §

542.10.

4.  The prisoner must first proceed through an informal resolution process at his/her

prison.  28 C.F.R. § 542.13(a).  If the informal resolution process is unsuccessful, the prisoner

may file a formal, written administrative remedy at his/her prison.  28 C.F.R. § 542.13(a).

5. An inmate who is not satisfied with his/her warden's decision on the request for the administrative remedy, may file an appeal to the appropriate regional director, and if not satisfied with the decision by the regional director, may file a further appeal to the agency's office of general counsel, where such appeals are directed to the National Inmate Appeals Administrator. 28 C.F. R. § 542.15.

6. The administrative remedy process that was followed in plaintiff's cases resulted in a final adjudication by Mr. Watts that was adverse to plaintiff. Exhibit 2 to the complaints.

7. Since the filing of plaintiff's cases in the District of Columbia, BOP has decided that defendant will be assigned to a half-way house for approximately the last month of his imprisonment. Exhibit A to defendants' motion to dismiss or, in the alternative, for summary judgment (declaration by Jenny Jones).

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
                                /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
202.514.7201

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARLAND WALTON,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )   Civ. No. 07-00746 (PLF) and
                                   )   Civ. No. 07-00837 (PLF)
BUREAU OF PRISONS, et al.,         )
                                   )
            Defendants.            )

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff, a prisoner at the Federal Correctional Institution in Waseca, Minnesota, is

serving a 27 month supervised release violation. He has filed the two above-captioned actions

(which are identical, except that one is single spaced and the other is double spaced) to challenge

a decision by the Bureau of Prisons ("BOP") denying him halfway-house placement for the last

six months of his sentence. He argues that he needs such placement to facilitate his re-entry into

civilian life and that the BOP's argument used to deny him such placement (that he had refused

to complete the release preparation program) was inaccurate. Having exhausted the BOP's

administrative remedy process, he filed the two lawsuits here. He seeks declaratory and

injunctive relief requiring BOP to reconsider him for halfway-house placement based on what he

believes are the correct facts, i.e., that he has not refused to participate in the release preparation

program. Plaintiff is also seeking damages from his caseworker at FCI Waseca, Jenny Jones; he

alleges that her "decision to deny Plaintiff any halfway house time was based upon Plaintiff

being African-American." Complaint, ¶ 19. Finally, he also seeks damages from Harrell Watts,

the BOP's Administrator of National Inmate Appeals. Plaintiff contends that Mr. Watts used

incorrect facts (that plaintiff had refused to participate in the release preparation program) in

making the final decision denying plaintiff's administrative remedy appeal. Plaintiff's release date, with or without halfway-house placement is September 19, 2007. Complaint, ¶ 3.

In addition to these two actions, plaintiff has filed a habeas petition in the United States District Court for the District of Minnesota, <u>Walton v. C. Holinka, Warden</u>, 07cv2121. This petition, which was brought under 28 U.S.C. § 2241, challenges the decision not to assign plaintiff to a half-way house for the final months of his sentence. The habeas petition has been briefed and is awaiting decision. The general principle under federal law is to avoid duplicative litigation. <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 817 (1976). This principle, together with the other factors discussed below, points in the direction of dismissing plaintiff's two cases in this Court.

<u>Summary Of Argument</u>

To the extent that these two cases are actions against BOP and its employees in the employees' official capacity, they should be dismissed for the following reasons:

1. There is no waiver of sovereign immunity cited by plaintiff that would permit the cases to proceed in this jurisdiction.

2. To the extent that the cases challenges the decision to deny plaintiff assignment to a half-way house for the final months of his sentence, the action can proceed by a habeas petition under 28 U. S. C. § 2241, which must be filed in the jurisdiction of plaintiff's confinement, and plaintiff already has such a petition pending.

3. To the extent that plaintiff is seeking damages under a common law tort theory against the defendants in their official or individual capacities, the suit is actually against the United States, and it should be dismissed because plaintiff has not alleged that he filed an administrative

tort claim with the federal government, as required by 28 U.S.C. § 2675 of the Federal Tort Claims Act.

4.   The cases are moot, since plaintiff has, subsequent to the filing of his lawsuits, been designated for placement in a half-way house for approximately the last month of his sentence.

To the extent that these two cases seek damages against defendants Watts and Jones in their individual capacities, the cases should be dismissed for the following additional reasons:

1.   Defendant Watts is absolutely immune from any suit that seeks damages by reason of his final adjudication of a prisoner's administrative remedy appeal.

2.   To the extent that the complaints may be intended to seek damages from the individual defendants for an alleged constitutional violation, i.e., under a Bivens cause of action, the complaints should be dismissed, since a challenge to the accuracy of an agency's record-keeping (the fundamental contention in this case is that BOP made its decision based on inaccurate information – a belief that plaintiff had not completed the release preparation program) should proceed through the Privacy Act, a statutory scheme that counsels against use of the Bivens remedy.

3.   Both defendants Watts and Jones are also entitled to assert qualified immunity as to claims of the commission of a constitutional tort in the connection with the decision that was made denying plaintiff half-way house placement for the final six months of his confinement. The imprecise nature of the allegations made in the complaint, however, hinder the application of the qualified immunity defense, and the cases should be dismissed under authority of Fed. R. Civ. P. 8(a)(2), without prejudice, for failure adequately to state a claim for relief.

4.  Defendant Jones has not been properly served with a summons and complaint in these two actions.

5.  This Court does not have personal jurisdiction over defendant Jones in her individual capacity.

6.  Under the well-pleaded complaint rule, venue is not proper in this Court.

<u>Standard Of Review</u>

Defendants are moving for dismissal of plaintiff's complaints pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5) and 12(b)(6), i.e., for lack of subject matter jurisdiction, for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted.  Requests for dismissal for lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) require a particular standard of review.  A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.  <u>Herbert v. National Academy of Science</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  <u>See</u> <u>id</u>.

In making determinations on a motion to dismiss under Rule 12(b)(6) , the federal courts have historically been enjoined to view the facts alleged in the complaint in the light most favorable to the plaintiff, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), and have directed that a complaint should only be dismissed if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 46.  The

4

Conley decision was recently abrogated by Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (May 21, 2007). There, the Supreme Court stated that a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed. 127 S.Ct. at 1967. This logic applies equally to cases against government employees where the assertion of qualified or absolute immunity at the initial stage of the case requires that there be some specificity in the pleading as to what rights the defendants are believed to have violated and by what actions. This is not a "heightened pleading" standard; rather, it is the minimum standard required under Fed. R. Civ. P. 8(a)(2).

Argument

A.  Sovereign Immunity.

Sovereign immunity bars all suits against the United States except those suits permitted by the explicit terms of a statutory waiver of that immunity. Lane v. Pena, 518 U.S. 187, 192 (1996). The complaints state (in the jurisdictional paragraphs) that the actions are being brought under 28 U.S.C. § 1331, the Administrative Procedure Act ("APA"), the mandamus statute, and the declaratory relief statute. Section 1331 is not a waiver of sovereign immunity; rather, it is a grant of federal question jurisdiction to the federal courts. As we explain below, the APA does not apply to plaintiff's claims. The Declaratory Judgment Act creates a remedy; it is not a waiver of sovereign immunity as to the United States. Baluster v. United States, 303 F.2d 617 (7th Cir. 1962); Tashimi v. Administrative Office of the United States Courts, 719 F.Supp. 881, 887, affirmed 967 F.2d 1264 (9th Cir. 1989). As for the mandamus remedy, it is true that "[n]o separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity." Fornado v. James, 416 F.3d 63, 69

5

(D.C. Cir. 2005).  The problem for plaintiff is that "[m]andamus is a 'drastic' remedy, 'to be invoked only in extraordinary circumstances.'"  Id.  To obtain relief under the mandamus statute, a plaintiff must show that he has a clear right to relief, that the defendant has a clear duty to act, and that there is no other adequate remedy available to him.  Id.  Since the decision as to the amount of time that a prisoner serves in a half-way house is one that involves the exercise by BOP of its discretion[1] and given the availability of habeas relief, mandamus is not a proper remedy in this case.

In the jurisdictional statement at the beginning of the two complaints, plaintiff identifies the APA as providing the needed waiver of sovereign immunity.  The complaints also identify 28 U.S.C. § 3624(c) as providing the statutory mandate that plaintiff relies on in this litigation, which he interprets as requiring BOP, to the extent practicable, to provide half-way house confinement at the end of a prisoner's sentence as a means of affording the prisoner a reasonable opportunity to adjust to re-entry into civilian life.  See Complaints, ¶ 2.  There is a fatal problem with these allegations.  Section 3624 appears in Subchapter C (imprisonment) of Chapter 229 of Title 18 of the United States Code.  The very next section, 18 U.S.C. § 3625, provides that the APA is inapplicable to any decision made under Subchapter C.  Consequently, the APA does not provide a waiver of sovereign immunity that would permit these cases to proceed, cases that are a direct attack on the BOP's decision as to how plaintiff would be housed during his confinement.

---

[1]  The statute under which BOP is acting is one that exudes the exercise of discretion: BOP "shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six month, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community."  18 U.S.C. §3624(c).

In an effort to avoid this problem, plaintiff cites in the complaint the decision by Judge Kennedy in Jasperson v. Federal Bureau of Prisons, 460 F.Supp. 2d 76 (D.D.C. 2006), where he permitted a prisoner to proceed under the APA in his challenge to the BOP's regulations governing assignment to half-way houses for the completion of sentences.  Judge Kennedy was very clear in his opinion, however, that the challenge being made by the prisoner was a challenge to the rulemaking process, not a challenge to a specific determination as to whether the prisoner should be assigned to a half-way house.  Here, by contrast, the challenge being made by plaintiff is to the specific decision to deny him assignment to a half-way house.  Jasperson, therefore, is not on point.

B.  The Habeas Remedy.

A means of challenging a decision such as the one at issue here,  the decision not to assign plaintiff to a half-way house for the final months of his imprisonment, is to proceed by way of a habeas petition under 28 U.S.C. § 2241.  Such a petition must be filed in the district where plaintiff is imprisoned – here,  the District of Minnesota.  See Razzoli v. Federal Bureau of Prisons, 230 F.3d 371, 373 (D.C.Cir. 2000)(a person imprisoned outside of the District of Columbia cannot challenge in this district the legality or duration of his confinement; he must proceed through a petition for habeas corpus in the district of his confinement).  The habeas remedy does not, therefore, provide a basis for proceeding with these cases in the District of Columbia.

C.  The Inapplicability Of The Federal Tort Claims Act.

Plaintiff seeks damages from defendants Watts and Jones.  The complaint is unclear as to the legal theory underlying the claims being made against defendants Watts and Jones in their

7

official or individual capacities.  To the extent that the damages claims are against the two defen-

dants for  alleged common law tort claims, either in the two defendants' official or individual

capacities, the only basis for recovering such damages would be by an action against the United

States under the Federal Tort Claims Act.  As a prerequisite to the filing of an action for such

damages, the plaintiff must have filed an administrative tort claim, 28 U.S.C. § 2675.  There is

no allegation in the complaints that such a claim has been filed.  There is, therefore, no basis on

which this action can proceed under the Federal Tort Claims Act.

D.  Mootness.

Since the filing of the complaints, BOP has decided to designate plaintiff to a half-way

house for approximately the last month of his sentence.  Exhibit A hereto (declaration of

plaintiff's case manager, Jenny Jones).  Since designation to a half-way house is the relief sought

by plaintiff in his two complaints, the complaints are now moot.  Mootness "conserves judicial

resources by allowing the federal courts to dismiss cases where there no longer is a live

controversy."  E. Chemerinski, Federal Jurisdiction, 4th ed., at 45 (2003).

E.  Harrell Watts Is Entitled To Absolute Immunity From Suit.

Harrell Watts is BOP's National Inmate Appeals Administrator.  See second exhibit to

each of the complaints (the decision by Mr. Watts affirming the decision by the warden at

plaintiff's prison, a decision that denied plaintiff's administrative remedy appeal seeking reversal

of the decision denying him assignment to a half-way house for the last six months of his prison

sentence).  BOP's administrative remedy process is set forth at 28 C.F.R. Part 542 (Admin-

istrative Remedy).  The "purpose of the Administrative Remedy Program is to allow an inmate

to seek formal review of an issue relating to any aspect of his/her own confinement."  28 C.F.R.

§ 542.10.  The prisoner must first proceed through an informal resolution process at his/her

prison.  28 C.F.R. § 542.13(a).  If the informal resolution process is unsuccessful, the prisoner

may file a formal, written administrative remedy at his/her prison.  28 C.F.R. § 542.13(a).  An

inmate who is not satisfied with his/her warden's decision on the request for the administrative

remedy, may file an appeal to the appropriate regional director, and if not satisfied with the

decision by the regional director, may file a further appeal to the agency's office of general

counsel, where such appeals are directed to the National Inmate Appeals Administrator.  28 C.F.

R. § 542.15.

The administrative remedy process that was followed in plaintiff's cases resulted in a

final adjudication by Mr. Watts that was adverse to plaintiff, i.e., the remedy sought by plaintiff

was denied.  In making this adjudication, Mr. Watts was, like a judge making an adjudication,

cloaked with absolute immunity from a suit for damages in his individual capacity.  This

principle is derived from  Butz v. Economou, 438 U.S. 478, 512-13 (1978) ("We think that

adjudication within a federal administrative agency shares enough of the characteristics of the

judicial process that those who participate in such adjudication should also be immune from suits

for damages.").  The administrative scheme in Butz involved a formal adjudication (a hearing

before an administrative law judge).  The procedure used in plaintiff's cases is informal

adjudication – plaintiff directed his remedy request to  the warden of his prison and then

appealed through the regional director to Mr. Watts, who made the final decision.  In making

that decision, Mr. Watts was acting like a judge, and the problem of unhappy prisoners then

suing him for alleged wrong-doing in making such a decision presents the same risk of litigation

that caused the Supreme Court to deny use of the Bivens remedy in the context of formal agency

9

adjudications.  The application of absolute immunity to Mr. Watts' decisions is, therefore,

appropriate.  Attached hereto as Exhibit B is an unpublished decision by Judge Kennedy of this

Court reaching this conclusion.

F.  There Is No Bivens Remedy In These Cases.

  To the extent that the complaint seeks relief for an alleged constitutional violation, i.e.,

under a Bivens cause of action, the complaint should be dismissed, since a challenge to the

accuracy of an agency's record-keeping (the fundamental contention in this case is that BOP

made its decision based on inaccurate information – a belief that plaintiff had not completed the

release preparation program) should proceed through the Privacy Act, a statutory scheme that

counsels against use of the Bivens remedy.

  The proper defendant in a Privacy Act action is the agency, here the Department of

Justice.  The Privacy Act specifically indicates that "the individual may bring a civil action

against the agency ." 5 U.S.C. § 552a(g)(1).  Therefore, the Privacy Act does not provide for

claims against individual defendants.  See Armstrong v. United States Bureau of Prisons, 976 F.

Supp. 17, 23 (D.D.C. 1997) (Privacy Act only allows a claim against the agency and "[t]he term

agency does not include individual officers or employees of an agency.");  Harrison v. Federal

Bureau of Prisons, No. 03- 2594 (D.C. 2004) (dismissing *sua sponte* Privacy Act complaint

against individual defendants). See Matusavage v. United States, 1986 WL 3944, 1 (E.D. Pa.

1986) ("the Privacy Act authorize[s] suit only against the agency that violates statutory

provisions and not against agency officials.").  Due to the lack of clarity in the complaint, it is

not clear whether plaintiff intended to proceed under the Privacy Act, but that act covers the type

of claim that is being made in plaintiff's cases.

Congress created a comprehensive remedial scheme by enacting the Privacy Act.  See

Griffin v. Ashcroft, No. 02-5399, 2003 WL 22097940, *1-*2 (D.C. Cir. Sept. 3, 2003) (affirming

dismissal of constitutional claims because "they are encompassed within the remedial scheme of

the Privacy Act").  Even if the remedies available in the Privacy Act for the maintenance of

inaccurate records were somehow deemed inadequate to address plaintiff's alleged harms fully,

their mere existence is sufficient reason for the courts not to create a Bivens cause of action:

> When the design of a Government program suggests that Congress has
> provided what it considers adequate remedial mechanisms for
> constitutional violations that may occur in the course of its administration,
> we have not created additional Bivens remedies.

Schweiker v. Chilicky, 487 U.S. 412, 423 (1987).  See also Bush v. Lucas, 462 U.S. 367, 368

(1983); Chung v. U.S. Dept. of Justice,  333 F.3d 273, 275 (D.C. Cir. 2003); Sinclair v. Hawke,

314 F.3d 934 (8th Cir. 2003).  See also Mangino v. Department of the Army, et al., 1994 WL

477260, 9 (D. Kan. 1994) ("Any Bivens claims that plaintiff might have with respect to the

[privacy claim] are barred by the Privacy Act.  In Bush v. Lucas, 462 U.S. 367 (1983), the

Supreme Court held that courts should refrain from implying a Bivens remedy when 'special

factors' counseling hesitation, such as Congressionally-provided remedies for constitutional

violations, are present."); Williams v. Department of Veterans Affairs, et al., 879 F. Supp. 578,

586 (E.D. Va. 1995) ("[plaintiff] cannot maintain a separate Bivens action for the conduct

alleged in the complaint.  The Privacy Act directly addresses and regulates the conduct of which

[plaintiff] complains . . .  Although the Privacy Act does not provide remedies against individual

officials who disobey its terms, it does provide aggrieved parties with significant remedies

against the offending agency.")

11

E.  The Complaints Fail To Meet The Pleading Standard Set In Fed. R. Civ. P. 8(a).

Both defendants Watts and Jones are entitled to assert qualified immunity as to any claims of the commission of a constitutional tort in connection with the decision that was made denying plaintiff half-way house placement for the final six months of his confinement.  The imprecise nature of the allegations made in the complaint, however, hinder the application of the qualified immunity defense, and the cases should be dismissed under authority of Fed. R. Civ. P. 8(a)(2), without prejudice, for failure adequately to state a claim for relief.[2]  This is the teaching of the Supreme Court's recent decision in Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (May 21, 2007), where some specificity in pleading was required in order that the Court could determine whether there was a factual and legal basis to go forward with the case.  As a minimum, there should be some statement of the nature of the claims being asserted in the cases and the legal basis upon which such claims are based, i.e., "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).

E.  Proper Service Of The Summons And Complaint Has Not Been Made on Defendant Jones.

To the extent that this action seeks relief against Ms. Jones in her individual capacity, proper service of the summons and complaints have not been made, requiring dismissal of these two cases under Fed. R. Civ. P. 12(b)(5).   The records of this Court, in both cases, show that a copy of the summons and complaint was mailed by the Marshals Service – by certified mail, return-receipt requested – to Ms. Jones at the Federal Correctional Institution at Waseca, MN.

---

[2]  However, because it appears that defendant Watts is sued solely because of his supervisory participation in the appeals process, this is an insufficient basis on which to support a Bivens claim against him.  See Exhibit C hereto, an unpublished opinion by Judge Robertson of this Court, at *4. The Westlaw citation is 2005 WL 752189 (March 31, 2005).

12

The signed return-receipt cards for both summons and complaints show that a K. Kirkland signed for the envelopes. Docket No. 5, 07cv00746; Docket No. 7, 07-00837.

Fed. R. Civ. P. 4(i)(2)(B) provides that service of process on a federal employee being sued in his/her individual capacity for acts or omissions occurring in connection with their federal employment "is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and serving the officer or employee in the manner prescribed by Rule 4(e)[service on an individual within a judicial district of the United States], (f) [service on an individual in a foreign country], or (g)[service upon infants and incompetent persons]." Rule 4(e), which is the sub-paragraph applicable here, provides in part for personal service on the individual or by leaving copies of the summons and complaints at the individual's residence "with some person of suitable age and discretion then residing therein," or by delivering copies to an authorized agent. None of these methods of service was used here.

Rule 4(e) also provides that service can be effected "pursuant to the law of the state in which the district court is located, or in which service is effected." This requires an examination of authorized methods of service in the local courts in the District of Columbia and Minnesota. Service in Superior Court of the District of Columbia is made under that Court's Rules of Civil Procedure, specifically Rule 4. It permits service of process by registered or certified mail, return receipt requested. Where the return-receipt card is not signed by the individual to whom service is being made, the Rules further provide that the proof of service must be accompanied by a statement that demonstrates that the person who signed for the envelope meets the appropriate qualifications for receipt of the process. Rule 4(l)(2). There is no such statement in the proof of service filed as to defendant Jones; consequently, adequate service of process has

13

not been made under the Superior Court's rules. Rule 4.05 of the Rules of Civil Procedure for

proceedings in the Minnesota state courts permits service by first-class mail, but require that

mail service be accompanied by an acknowledgment of service. Unless the acknowledgment is

executed and returned, the service by mail is ineffectual. Since no executed acknowledgment of

service has been made by defendant Jones, proper service has not been made on her.[3] <u>See</u>

<u>Leichtman v. Koons</u>, 527 A.2d 745, 747, n. 5 (D.C. 1987) (office employee with authority to

receive business mail does not, by virtue of his or her position, have authority to receive process,

and actual knowledge of the existence of a lawsuit is no substitute for personal service).

F.  <u>This Court Does Not Have Personal Jurisdiction Over Defendant Jones.</u>

     This Court lacks personal jurisdiction over defendant Jones, since plaintiff has failed to

effect proper service. It is well-established that, in an action against a federal employee in an

individual capacity, the individually-sued defendant must be served with process in accordance

with rules applicable to individual defendants. <u>See</u> <u>Simpkins v. District of Columbia Govt.</u>, 108

F.3d 366 (D.C. Cir. 1997); <u>Lawrence v. Acree</u>, 79 F.R.D. 669, 670 (D.D.C. 1978); <u>Navy,

Marshall & Gordon v. U.S. Int'l Dev.-Corp. Agency</u>, 557 F. Supp. 484, 489 (D.D.C. 1983);

<u>Delgado v. Bureau of Prisons</u>, 727 F. Supp. 24 (D.D.C. 1989). And the Court must acquire

personal jurisdiction in order to enter a binding judgment, <u>Reuber v. United States</u>, 750 F.2d

1039, 1049 (D.C. Cir. 1984); <u>Griffith v. Nixon</u>, 518 F.2d 1195 (2d Cir.), <u>cert.</u> <u>denied</u>, 423 U.S.

995 (1975). The general rule is that a plaintiff has the burden of establishing personal juris-

diction. <u>Reuber</u>, <u>supra</u> 750 F.2d at 1050.

---

   [3]  Because Ms. Jones has not been properly served in her individual capacity, she does not
appear here as a party in her individual capacity; she appears in her official capacity only.

In order for the United States District Court for the District of Columbia to have personal jurisdiction over a nonresident defendant, such as defendant Jones, jurisdiction must be proper under the District of Columbia's long-arm statute and must be consistent with the constitutional requirements of due process.  See GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000); United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987).  The District of Columbia's long-arm statute, D.C. Code section 13-423, provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–
>
> > (1) transacting any business in the District of Columbia;
> >
> > (2) contracting to supply services in the District of Columbia;
> >
> > (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> >
> > (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> >
> > (5) having an interest in, using, or possessing real property in the District of Columbia;
> >
> > (6) contracting to insure or act as surety ...; or
> >
> > (7) marital or parent and child relationship ...
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

If the terms of the long-arm statute are satisfied, a plaintiff must then show that the exercise of personal jurisdiction is within the bounds of the Due Process Clause.  See GTE New

Media Servs. Inc., 199 F.3d at 1347.  A plaintiff must show "minimum contacts" between the defendant and the forum so as to establish that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  See id.; Wiggins v. Equifax Inc., 853 F. Supp. 500, 502 (D.D.C. 1994).  Under the "minimum contacts" standard, courts must find that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there."  GTE New Media Servs. Inc., 199 F.3d at 1347 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Plaintiff bears the burden of pleading the facts necessary to substantiate personal jurisdiction in this Court.  See Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990); Novak-Canzeri v. Saud, 864 F. Supp. 203, 205 (D.D.C. 1994).

In the instant cases, plaintiff cannot meet his burden of establishing in personam jurisdiction in the District of Columbia under § 13-423 as to defendant Jones.  The record in this case shows that she lives outside the District Columbia and has performed no acts in the District of Columbia that would give rise to personal jurisdiction here.  Furthermore, plaintiff has failed to allege facts showing that the exercise of personal jurisdiction over Ms. Jones in this case would satisfy due process requirements.  In fact, plaintiff does not establish any connection between Ms. Jones and the District of Columbia in his complaints.  Consequently, the Court should dismiss all claims against defendant Jones for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

F.  Venue Is Improper As To The Claims Against Defendant Jones.

There is no act alleged in the complaint that was committed by defendant Jones in the District of Columbia.  There is no allegation that she conspired with defendant Watts to deny

16

plaintiff assignment to a half-way house.  Indeed, as we explained above, defendant Watts

should be dismissed from this case, and under the well-pleaded complaint rule, his presence in

the cases should not be used to establish venue.  The venue for an action against defendant Jones

lies in Minnesota, where she is employed at the Federal Correctional Institution at Waseca.  See

Stafford v. Briggs, 444 U.S. 517 (1980) (Venue in suits against federal employees seeking

damages in their individual capacities for official acts lies in the district in which all defendants

reside or where the claim arose).

Conclusion

For the reasons set forth above, defendant's cases should be dismissed.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
                    /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARLAND WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 07-00746 (PLF) and |
| | )   Civ. No. 07-00837 (PLF) |
| BUREAU OF PRISONS, et al., | ) |
| | ) |
| Defendants. | ) |

<u>Order</u>

Upon consideration of the defendants' motion to dismiss or, in the alternative, for

summary judgment, and the record in this case, it is hereby

ORDERED that these two cases are dismissed without prejudice.  This is a final,

appealable order.

UNITED STATES DISTRICT JUDGE

Copies to the pro se plaintiff and counsel for defendants.

CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing motion to dismiss or, in the

alternative, for summary judgment to be served by first-class mail, postage prepaid, this 25th day

of July, 2007, on:

> Mr. Garland Walton
> R 03516-025
> Waseca Federal Correctional Institution
> P.O. Box 1731
> Waseca, MN 56093

> > /s/
> > Fred E. Haynes, D.C. Bar # 165654
> > Assistant United States Attorney
> > 555 4th Street, N.W., Room E-4110
> > Washington, D.C. 20530
> > (202) 514-7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                              )
GARLAND WALTON,               )
                              )
        Plaintiff,            )
                              )
    v.                        )  Civil Action No. 07-746
                              )  Civil Action No. 07-837
                              )
FEDERAL BUREAU                )
    OF PRISONS, et al.,       )
                              )
        Defendants            )
_____)
```

### DECLARATION OF JENNY JONES

I, Jenny Jones, hereby declare and state the following:

1.  I am and have been a Case Manager at the Federal Correctional Institution, in Waseca, Minnesota, Federal Bureau of Prisons (BOP) since December, 1998.

2.  Garland Walton, Register Number 03516-125, is currently an inmate assigned to a housing unit under my supervision.  In the course of carrying out my duties, I have access to inmate files and records.  I am a member of the Unit Team, which makes decisions regarding prerelease plans, including halfway house placement, for inmates nearing their release date.

3.  I have reviewed the file of Inmate Walton and it reflects that Inmate Walton has been designated to a half way house for approximately the last month of his sentence.



EXHIBIT
A

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __23rd__ of July, 2007.

Jenny Jones
Case Manager
Federal Correctional Institution
Waseca, Minnesota

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ronald George Bailey-El,                )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )      Civil Action No. 03-2638
                                        )
John Ashcroft, et al.,                  )
                                        )
            Defendants.                 )



**FILED**

DEC 2 4 2003

MEMORANDUM OPINION AND ORDER     NANCY MAYER WHITTINGTON, CLERK
                                          U.S. DISTRICT COURT

      This matter is before the Court on its initial review of plaintiff's *pro se* complaint, which

is accompanied with an application for leave to proceed *in forma pauperis*. The Court will grant

plaintiff's application to proceed *in forma pauperis* and, pursuant to 28 U.S.C. § 1915A,[1] will

dismiss the complaint against some defendants for failure to state a claim upon which relief may

be granted and against one defendant on grounds of immunity. The Court will direct assignment

of the remainder of the complaint.

      Plaintiff is a prisoner incarcerated at the United States Penitentiary in Jonesville, Virginia

("USP Lee"). He sues Attorney General John Ashcroft, Bureau of Prisons ("BOP") Director

Harley G. Lappin, individual members of the BOP's General Counsel's Office, BOP's National

Inmate Appeals Administrator Harrell Watts, BOP's Northeast Regional Director Mickey E.

Ray, the warden and former warden of the Federal Correctional Institution ("FCI") in Fairton,

New Jersey, the warden of USP Lee, and a host of employees at FCI Fairton and USP Lee.

---

      [1]      Pursuant to this statute, the district court is required to screen and, if appropriate,
dismiss a prisoner's complaint against a governmental entity or officer as soon as feasible.





**EXHIBIT**
B

Plaintiff brings this action for damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The United States Court of Appeals for this Circuit has articulated a "duty of the lower federal courts to stop insubstantial *Bivens* actions in their tracks and get rid of them." *Simpkins v. District of Columbia Government*, 108 F.3d 366, 370 (D.C. Cir. 1997)(citations omitted). A federal official can be individually liable under *Bivens* when it is shown that the official was personally or directly responsible for the alleged constitutional violations. *See Simpkins v. District of Columbia Government*, 108 F.3d at 368-69; *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir.1993).

Plaintiff makes separate, unrelated claims against the FCI Fairton defendants and the USP Lee defendants, but none of the allegations directly implicates Ashcroft, Lappin, Ray, or the members of the General Counsel's Office. Moreover, Watts is absolutely immune from this lawsuit insofar as the claim against him arises from plaintiff's alleged "appearance" before him where Watts is alleged to have "heard, entertained and adjudicated [plaintiff's] appeal." Complaint at 16 ¶ 68. *See Butz v. Economou*, 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); *see also Pate v. United States*, 277 F. Supp. 2d 1, 6-11 (D.D.C. 2003) (finding parole board official absolutely immune for acts akin to judicial function). To the extent plaintiff is suing these defendants in their official capacity for monetary damages, he sues the United States under the Federal Tort Claims Act ("FTCA"). The Court lacks subject matter jurisdiction over the FTCA claim because plaintiff has not shown that he exhausted administrative remedies pursuant to 28 U.S.C. § 2675. *See GAF Corp. v. United States*, 818 F.2d 901, 917-20 (D.C.

- 2 -

Cir.1987); *Jackson v. United States,* 730 F.2d 808, 809 (D.C. Cir.1984); *Stokes v. U.S. Postal Service,* 937 F. Supp. 11, 14 (D.D.C.1996).

The remainder of the complaint reveals no connection to this judicial district. Ordinarily, the Court would consider the appropriateness of transferring the case to a judicial district of proper venue. It cannot do so here because plaintiff's claims arise from events allegedly occurring substantially in two separate venues. *See* 28 U.S.C. § 1391(b). Accordingly, it is this 2ND day of December 2003,

ORDERED that the complaint is DISMISSED with respect to John Ashcroft, Harley G. Lappin, Harrell Watts, Mickey E. Ray, and the 23 individually named members of the General Counsel of the Federal Bureau of Prisons; and it is

FURTHER ORDERED that the Clerk directly assign the remainder of the case to a district judge. A separate Order granting plaintiff's application to proceed *in forma pauperis* and assessing a partial filing fee will be issued contemporaneously.

United States District Judge

-3-

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2005 WL 752189 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Harrison v. Lappin
D.D.C.,2005.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
William Henry HARRISON, Plaintiff,
v.
Harley G. LAPPIN, et al., Defendants.
No. Civ.A. 04-0681(JR).

March 31, 2005.

William Henry Harrison, Petersberg, VA, pro se.
Alan Burch, U.S. Attorney's Office, Washington, DC, Barry M. Schreiber, Aaronson, Rpapaport, Feinstein & Deutsch, LLP, New York, NY, for Defendants.

*MEMORANDUM OPINION*
ROBERTSON, J.
**\*1** This matter is before the Court on defendants' motions to dismiss. For the reasons explained below, the motions will be granted.

### I. BACKGROUND

Plaintiff, a Vietnam veteran, allegedly experienced a "flashback and psychotic episode" during his arraignment proceeding before the United States District Court for the Eastern District of Texas on January 7, 1999. Compl., ¶ 31. The presiding Magistrate Judge ordered plaintiff to undergo a psychological evaluation in order for the court to determine whether he was competent to stand trial. *Id* ., ¶ 32. Plaintiff was transported to the Metropolitan Correctional Center in New York City. *Id.*, ¶ 33. While in New York, plaintiff was transferred to Lutheran Hospital, where he allegedly was administered anti-psychotic medications without his knowledge or consent. *Id.*, ¶¶ 35-38.

Subsequently, in May 1999, plaintiff was transferred to the Federal Medical Center in Butner, North Carolina ("FMC Butner"). Compl., ¶ 42. After examining plaintiff, a forensic psychiatrist determined that plaintiff was competent to stand trial. *Id.*, ¶¶ 18, 42. Plaintiff was transferred back to Texas.

In Texas, plaintiff was examined by another psychologist in September 1999. Compl., ¶ 43. Based on his report, the Magistrate Judge determined that plaintiff was not competent to stand trial. *Id* Thereafter, in January 2000, plaintiff was transferred back to FMC Butner for further evaluation. *Id.* The forensic psychiatrist there allegedly ordered medical staff to restrain plaintiff and to administer forcibly the anti-psychotropic drug Haldol. *Id.*, ¶¶ 48, 50-51. When it appeared that plaintiff was not responding to Haldol, the psychiatrist prescribed other medications. *Id.*, ¶¶ 52-53.

Plaintiff appeared before the United States District Court for the Eastern District of Texas again in May 2001. Compl., ¶ 53. After it was determined that plaintiff was not competent to stand trial, plaintiff was transferred to the Federal Medical Center in Rochester, Minnesota. *Id.*, ¶ 54. In January 2002, plaintiff was transferred back to Texas. *Id.*, ¶ 56. Presumably after the court found plaintiff competent, in June 2002 he was tried and convicted of unspecified offenses, and in January 2003 he was sentenced to a term of imprisonment. *Id.*, ¶ 57. He was transferred to the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg" ), where he currently is serving his sentence. *Id.* ¶ 58.

Plaintiff's complains of severe headaches, high blood pressure, involuntary muscle spasms, and other symptoms that he attributes to the forcible administration of anti-psychotropic medication. Compl., ¶¶ 59, 61, 64. He also complains of injury to his left foot and heel due to defendants' failure to provide footwear with proper arch support

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 752189 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

and cushioning. *Id.*, ¶¶ 66-69. Plaintiff claims to be "suffering from some kind of foreign germ (bacteria, fungus, etc .) in his sinus area, throat, and lungs," and from back pain experienced since he was in the military. *Id.*, ¶ 77; Amd. Compl., ¶ 9. [FN1] He contends that medical staff at FCI Petersburg fail to provide adequate medical treatment for all of his conditions.

> FN1. Since the filing of his original complaint, plaintiff has filed an " Amendment and Supplement to Civil Action Pursuant to Rules 15(a) & (d) of F.R.C.P," [Dkt. # 15], a "Motion to Amend Complaint Pursuant to Federal Rules of Civil Procedure, Rule 15(a)," [Dkt. # 16], a "Further Amendment and Supplement to Complaint, Rules 15(a) & (d) of F.R.C.P," [Dkt. # 24], and a " Motion to Further Amend and Supplement Complaint to Add the 'United States' as a Defendant Under Rules 15(a) & (d) of F.R.C.P., and the F.T.C.A.," [Dkt. # 29]. The Court construes them as supplements to the original complaint and, in certain respects, as oppositions to the federal defendants' first motion to dismiss.

**\*2** Plaintiff's first supplement to the complaint, *see* Dkt. # 15, fleshes out the allegations of the initial complaint, and describes events occurring during his incarceration at FCI Petersburg. These events relate particularly to medical treatment or lack thereof, disciplinary matters, and inmate grievances. His subsequent pleadings, *see* Dkt. # 16, 24, 29, also relate particularly to events occurring at FCI Petersburg.

Plaintiff brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552,[FN2] the First, Fourth, and Eighth Amendments to the United States Constitution, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the federal mandamus statute, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*

> FN2. The nature and content of plaintiff's FOIA requests are not entirely clear. Nor does counsel for the federal defendants address this claim in its dispositive motions.

## II. DISCUSSION

*A. This Court lacks personal jurisdiction over individual defendants Gottlieb, Brooks, Laybourne, Fajardo, Panaguiton, Negron, DeWaldt, Johnson, Herbel, Zula, Moses, "Unknown Black Lieutenant," "Unknown Corrections Officers," "Unknown Nurses," Wyrick, Wheeler, Harding, and Speights.*

A District of Columbia court may exercise personal jurisdiction over a person who is "domiciled in, organized under the laws of, or maintaining [a] principal place of business in, the District of Columbia as to any claim for relief." D.C.Code § 13-422 (2001). With the exception of defendants Lappin and Watts, most of the individual defendants appear to be employees of the Federal Bureau of Prisons who were working at FMC Butner and FCI Petersburg. Nothing in plaintiff's pleadings alleges or even suggests that these defendants are residents of the District of Columbia, or that they maintain a principal place of business in the District of Columbia.

The Court engages in a two-part inquiry in order to determine whether it may exercise personal jurisdiction over a non-resident defendant. First, the Court must determine whether jurisdiction may be exercised under the District's long-arm statute. *GTE New Media Services, Inc. v. Bell South Corp.*, 199 F.3d 1343, 1347 (D.C.Cir.2000). Second, the Court must determine whether the exercise of personal jurisdiction satisfies due process requirements. *Id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.Cir.1995)).

Turning now to the District's long-arm statute, a District of Columbia court may exercise personal jurisdiction over a non-resident defendant who either (1) transacts any business in the District, (2) causes tortious injury in the District by an act or omission in the District, or (3) causes tortious injury

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 3

Not Reported in F.Supp.2d, 2005 WL 752189 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

in the District "by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." [FN3] D.C.Code § 13-423(a) (2001). Plaintiff bears the burden of establishing that personal jurisdiction under the long-arm statute exists "by demonstrating a factual basis for the exercise of such jurisdiction over the defendant." *Novak-Canzeri v. Saud,* 864 F.Supp. 203, 205 (D.D.C.1993) (citing *First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1378 (D.C.Cir.1988) ). Plaintiff does not meet his burden.

> FN3. The District's long-arm statute sets forth alternative bases for long-arm jurisdiction. *See* D.C.Code § 13-423(a)(2001). None of these alternatives is relevant in this case.

*3 Plaintiff does not allege that any of these defendants transact any personal business in the District of Columbia. Although persistent conduct undertaken in a person's individual capacity may constitute the transaction of business for purposes of the long-arm statute, *see Pollack v. Meese,* 737 F.Supp. 663, 666 (D.D.C.1990), the complaint sets forth no allegations that these defendants have any personal connection with the District of Columbia. The mere fact that these defendants are employees of the BOP, the headquarters office of which is in the District, does not render them subject to suit in their individual capacities in the District of Columbia. *See Stafford v. Briggs,* 444 U.S. 527, 543-45, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) (absent minimum contacts other than those arising from federal employment, court may not exercise personal jurisdiction over federal official in his individual capacity).

Finally, the complaint alleges no facts to establish that plaintiff suffered any injury in the District of Columbia. The actual injuries of which plaintiff complains occurred in New York, North Carolina, and Virginia. Regardless of whether these defendants acted in or outside of the District of Columbia, plaintiff suffered no injury here.

Accordingly, the Court concludes that it lacks personal jurisdiction over defendants Gottlieb, Brooks, Laybourne, Fajardo, Panaguiton, Negron, DeWaldt, Johnson, Herbel, Zula, Moses, "Unknown Black Lieutenant," "Unknown Corrections Officers, " "Unknown Nurses," Wyrick, Wheeler, Harding, and Speights pursuant to the District's long-arm statute. [FN4]

> FN4. For these same reasons, the Court concludes that it lacks personal jurisdiction over Lutheran Hospital, the Director of the New York City Health and Hospitals Corporation, Director of Lutheran Hospital, the Chief Executive Officer of the "Unknown Security Company," the " Unknown Security Company," "Ten Unknown Security Guards," "Unknown Dr. (Psychiatrist)," and "Unknown Nurse" employed by or at Lutheran Hospital in New York.

### B. Plaintiff fails to state a claim against defendants Lappin and Watts.

Plaintiff brings *Bivens* claims against individual defendants Lappin and Watts in individual capacities. These are the only two individual defendants who appear to be found in this judicial district. Keeping in mind that *pro se* pleadings are construed liberally, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the complaint fails to state a claim against defendants Lappin and Watts.

As Director of the BOP, Lappin has supervisory and oversight responsibility for the agency's activities. Plaintiff does not allege that Lappin approved of a policy or otherwise acted in his capacity as BOP's Director in a way that caused plaintiff injury. Furthermore, to the extent that plaintiff's theory of the case is to hold Lappin liable for the allegedly unconstitutional acts of his subordinates, such a theory cannot stand. Lappin's status as the agency's head does not render him liable for the alleged wrongful acts of the agency's employees. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 4

Not Reported in F.Supp.2d, 2005 WL 752189 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

L.Ed.2d 611 (1978) (*respondeat superior* liability cannot form the basis of liability for a § 1983 claim); *see also Cameron v. Thornburgh,* 983 F.2d 253, 258 (D.C.Cir.1993) (complaint naming Attorney General and BOP Director as defendants based on theory of *respondeat superior,* without allegations specifying their involvement in the case, do not state *Bivens* claim).

*4 Similarly, although plaintiff names Harrell Watts, BOP's Administrative Remedy Coordinator, as a defendant to this action, nothing in the complaint or supplemental pleadings states a claim against him. The mere fact that he supervises other BOP staff who may have addressed plaintiff's inmate grievances is not a sufficient basis to hold Watts liable for their alleged unconstitutional action.

### C. Venue in this district is not proper.

"Courts in this jurisdiction must examine challenges to **personal jurisdiction** and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C.Cir.1993).

Where the Court's jurisdiction is not based solely on diversity of citizenship, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). Venue is not proper in this district under 28 U.S.C. § 1391(b) because all defendants do not reside in the District of Columbia because a substantial part of the events giving rise to Plaintiff's claim took place at elsewhere, and because this is not a case in which no other district is available.

Assuming without deciding that plaintiff states a cognizable FTCA claim, venue in this district is not proper for this claim either. Venue for an FTCA claim exists only where the cause of action arose or where plaintiff resides. *See* 28 U.S.C. § 1402(a).

### III. CONCLUSION

The Court concludes that complaint fails to state a claim against defendants Lappin and Watts, and that the Court lacks personal jurisdiction over defendants Gottlieb, Brooks, Laybourne, Fajardo, Panaguiton, Negron, DeWaldt, Johnson, Herbel, Zula, Moses, "Unknown Black Lieutenant," "Unknown Corrections Officers," "Unknown Nurses," " Wyrick, Wheeler, Harding, Speights, Lutheran Hospital, Director of the New York City Health and Hospitals Corporation, Director of Lutheran Hospital, the Chief Executive Officer of the " Unknown Security Company," the "Unknown Security Company," "Ten Unknown Security Guards," "Unknown Dr. (Psychiatrist)," and " Unknown Nurse" employed by or at Lutheran Hospital in New York. Defendants' motions to dismiss are granted on these grounds, and plaintiff's FTCA claim is dismissed for improper venue. An Order consistent with this Memorandum Opinion will be issued separately on this same date.

D.D.C.,2005.
Harrison v. Lappin
Not Reported in F.Supp.2d, 2005 WL 752189 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.